IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EASTERN EXPRESS, INC.,<br>Plaintiff,<br><br>v.<br><br>PETE RAHN CONSTRUCTION COMPANY,<br>Defendant. | Case No. 21–CV–00333–JPG |

**MEMORANDUM AND ORDER**

This is a breach of contract and indemnity suit. Before the Court are Plaintiff Eastern Express, Inc.'s ("Eastern's") Motion for Remand and Attorneys' Fees, (ECF No. 23), and its Memorandum in Support, (ECF No. 24). Defendant Pete Rahn Construction Company ("Rahn") responded. (ECF No. 27). For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Eastern's Motion and **REMANDS** to Illinois's Twentieth Judicial Circuit Court in Randolph County.

## I. PROCEDURAL AND FACTUAL HISTORY

According to the Complaint, Eastern is a "broker that arranges for the motor transportation of property" across the country. (Compl. at 1, ECF No. 1-1). Rahn is a company that provides such transportation. (*Id.*).

In 2018, Eastern and Rahn "entered into a written contract . . . to transport cargo belonging to U.S. Steel Corporation . . . ." (*Id.* at 2). The contract was made under the Carmack Amendment, 49 U.S.C. § 14101, which regulates the relationship between shippers and motor carriers. (*See* Broker/Motor Carrier Agreement ¶3, ECF No. 1-2). Section 14101 of the Carmack Amendment makes it "[t]he exclusive remedy for any alleged breach of contract" unless "the shipper and carrier, in writing, expressly waive any or all rights and remedies . . . for the transportation covered

by the contract . . . ." To that end, Section 14706 (in Chapter 147) allows for suits "brought against the carrier alleged to have caused . . . loss or damage . . . in a United States district court . . . ."

With that in mind, the litigants "expressly waive[d] all provisions of" Chapter 147 "to the extent that such provisions are in conflict with the express provisions of" their contract. (Broker/Motor Carrier Agreement ¶3). Even so, Rahn agreed that it could "assume[] liability for any cargo damage, loss, or theft from any cause . . . as determined under" Section 14706. (*Id.* ¶5). Rahn also "agree[d] to indemnify and hold harmless [Eastern] from any against any and all claims of any nature whatsoever arising out of [Rahn's] actions, omissions, or negligence as to" all loss of the cargo. (*Id.* ¶7).

In the end, the property that Eastern contracted with Rahn to ship never arrived. (Compl. at 2). Its whereabouts, "valued at $21,552.60 is unknown." (*Id.*). As a result, Eastern was forced to reimburse U.S. Steel for the value of the lost goods. (*Id.* at 3).

Eastern sued Rahn in Illinois's Twentieth Judicial Circuit Court in Randolph County. (*See id.* at 1). It raised state-law claims for breach-of-contract and indemnity. (*Id.* at 1–4).

Rahn removed the action to this Court based on federal-question jurisdiction, 28 U.S.C. § 1331. (*See* Not. of Removal at 1, ECF No. 1). In brief, it stated that Eastern's state-law claims "are really Carmack Amendment claims and are" thus completely preempted, raising a federal question. (*Id.* at 2).

Finally, Eastern moved to remand, arguing that the litigants expressly waived the application of the Carmack Amendment in Paragraph 3 of their contract. (*See* Eastern's Mem. in Support at 2).

## II. LAW AND ANALYSIS

"A civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (citing 28 U.S.C. § 1441). And a civil action arises under federal law when federal law is present in the original cause of action. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153 (1908); § 1331. In other words, "absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Anderson*, 539 U.S. at 6. This *well-pleaded complaint rule* embodies the "paramount policies . . . that the plaintiff is master of the complaint . . . and that the plaintiff may, by eschewing claims based on federal law, choose to have the case heard in state court." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 389–99 (1987).

With that in mind, the *complete-preemption doctrine* is an exception to the well-pleaded complaint rule: "[W]here Congress has completely preempted a given area of state law, a plaintiff's state law claim will be 'recharacterized' as a federal claim so that removal becomes proper." *Hart v. Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan*, 360 F.3d 674, 678 (7th Cir. 2004). Thus "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983).

Relevant here, "[t]he Carmack Amendment . . . preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments." *N. Am. Van Lines, Inc. v. Pinkerton Sec'y Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996); 49 U.S.C. § 14101. The congressional intent behind this preemption was to address "the disparate schemes of carrier liability that existed among the states, some of which allowed carriers to limit or disclaim liability,

others that permitted full recovery. . . . To solve this problem, the Carmack Amendment 'created a nationally uniform rule of carrier liability concerning interstate shipments.' " *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008) (quoting *N. Am. Van Lines v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 454 (7th Cir. 1996)).

That said, the Carmack Amendment also allows parties to a contract to forgo its application through an express written waiver. 49 U.S.C. § 14101. The question now before the Court is whether Paragraph 3 of the litigants' contract constitutes such a waiver, thus negating the Carmack Amendment's preemptive effect and requiring remand.

Paragraph 3 states as follows:

> All services provided by CARRIER under this Agreement shall be rendered as contract carriage within the meaning of 49 U.S.C. §§ 13104(4)(b) and 14101(b). In connection with such contract carriage services, BROKER and CARRIER hereby expressly waive all provisions of Chapters 137 and 147, and any other provisions of 49 U.S.C. Subtitle IV, Part B, to the extent that such provisions are in conflict with the express provisions of this Agreement. BROKER and CARRIER do not, however, waive the provisions of that Subtitle relating to registration, insurance, or safety fitness.

(Broker/Carrier Agreement ¶3).

Rahn argues that Paragraph 3 is not a valid waiver of the Carmack Amendment for two reasons. First, pointing to the statutory language, it says that only "shippers" and "carriers" can forgo application of the Carmack Amendment; yet Eastern is a broker, not a shipper. True enough, the text says, "If the **shipper and carrier**, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies . . . ." 49 U.S.C. § 14101 (emphasis added). But Eastern, as a broker, acted as a conduit for the shipper, U.S. Steel. Indeed, the first line of Paragraph 3 confirms that the contract is a "contract carriage within the meaning of"

Section 14101(b); and Section 14101(b) is captioned, "Contracts with shippers." At bottom, breach-of-contract claims by a carrier against a broker fall under the Carmack Amendment's "preemptive sweep." *See REI Transport, Inc.*, 519 F.3d at 697. The Court is therefore unmoved by Rahn's contention that brokers cannot invoke the Carmack Amendment's waiver provision.

Rahn also argues that the "waiver" in Paragraph 3 is ambiguous and should therefore be "knocked out." The litigants cite the same District of Arizona case for conflicting propositions, and only one is right. In *Smithfield Beef Group-Tolleson, Inc. v. Knight Refrigerated, LLC*, a beef processor hired a transportation company to ship its goods. No. CV 08-1929-PHX-MHM, 2009 WL 1651389, at *1 (D. Ariz. June 12, 2009). The transportation company failed to deliver the property on time, so the processor sued. *Id.* Their contract contained many similarities to the one in this case. For one, it contained a waiver provision stating, "WHEREAS, the parties hereto expressly waive any and all rights and remedies . . . for the transportation provided hereunder pursuant to 49 U.S.C. § 14101(b)(1)." *Id.* at *2. The district court found this language to be enough: "The parties clearly expressly agreed to waive the Carmack Amendment at the beginning of the contract." *Id.* But like Rahn, the carrier argued that because "the parties also reference[d] the Carmack Amendment throughout the agreement in at least five other places," it had "the effect of 'reviving' the Carmack Amendment and making the initial waiver of it ineffective." *Id.* The district court saw it differently: "[T]he parties agreed to waive the Carmack Amendment as a whole, but chose to selectively incorporate certain aspects of it back into their agreement without adopting it as a whole." *Id.* This was "the most reasonable explanation, particularly given the general rule that a contract must be interpreted to give meaning to all of its terms, presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Id.* at *3. In other words, Rahn's assertion that *Smithfield Beef Group-Tolleson, Inc.* means

multiple references to the Carmack Amendment in a contract "should knock each other out" is unsupported.

Several other courts have cited *Smithfield Beef Group-Tolleson, Inc.* when finding express waivers of the Carmack Amendment. In *Aviva Trucking Special Lines v. Ashe*, for example, the district court considered a contract provision that said, "This contract service is designed to meet the distinct needs of the customer and the parties expressly waive all rights and obligations allowed by 49 U.S.C. § 14101 to the extent [they] conflict with the terms of this contract."400 F. Supp. 3d 76, 80 (S.D.N.Y. 2019). This language, the court said, made it "plain" that the litigants "expressly waive[d] the Carmack Amendment . . . ." *Id.* Similarly, in *Safoni-Aventis U.S., LLC v. Great American Lines, Inc.*, the district court considered a contract provision that said, "Pursuant to 49 U.S.C. § 14101(b)(1), the parties expressly waive any and all provisions under the [Carmack Amendment] and the regulations thereunder to the extent that such provisions conflict with the terms of the [contract] or the parties' course of performance hereunder." No. 10-2023, 2016 WL 4472949, at *2 (D.N.J. Aug. 22, 2016). Again, citing *Smithfield Beef Group-Tolleson, Inc.*, the district court determined that the litigants "effectively waived Carmack Amendment claims as they [were] entitled to pursuant to § 14101(1)." *Id.* The court also noted that other references to the Carmack Amendment in the contract did not make the waiver ambiguous: "[T]he reasonable explanation for the limiting language in the waiver—'to the extent that such provisions conflict'—is that [the litigants] agreed to waive the Carmack Amendment as a whole, but wanted to make clear that any of the default rules of the Carmack Amendment that they wrote specifically into the [contract] should not be disturbed." *Id.* Eastern pointed to each of these cases to support its claim of waiver, but Rahn ignored them.

The Court agrees with the several district courts considering similar contract language that Paragraph 3 was an express waiver of the Carmack Amendment. It states unambiguously that the litigants "expressly waive all provisions of Chapters 137 and 147, and any other provisions of 49 U.S.C. Subtitle IV, Part B, to the extent that such provisions are in conflict with the express provisions of" the contract. Chapter 147 includes Section 14706, the preemption provision. Indeed, Section 14101 also allows parties to waive the Carmack Amendment's application altogether. And other references to the Carmack Amendment in the contract do not make it so ambiguous that Paragraph 3 should be knocked out. *See Herbert Shaffer Assocs., Inc. v. First Bank of Oak Park*, 332 N.E.2d 703, 708 (1975) ("Where possible, all provisions of the contract are to be construed harmoniously. All phrases and clauses are presumed to have been inserted deliberately and for a purpose.").

Finally, Rahn argues that even if the waiver applies and Eastern's claims remain under state law, the Court should still find that subject-matter jurisdiction exists because the contract says that liability will be "determined under the Carmack Amendment." This assertion is rooted in the doctrine of *nesting jurisdiction* acknowledge by the Supreme Court in *Smith v. Kansas City Title & Trust Co.*, 255, U.S. 180 (1921). In brief, although state law may provide a cause of action, federal-question jurisdiction may exist when it "appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]." *Id.* at 199. "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Under Illinois law, "[t]he essential elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff." *Pepper Const. Co. v. Palmolive Tower Condos., LLC*, 59 N.E.3d 41, 66 (Ill. App. Ct. 2016).

Rahn argues that proving breach will necessarily depend on "the application and construction of the Carmack Amendment." (Rahn's Resp. at 6). The Court disagrees. True enough, the contract states that Rahn would "assume[] liability for any cargo damage, loss, or theft from any cause as an interstate motor carrier, *as determined under the Carmack Amendment (49 U.S.C. § 14706)* . . . ." (Broker/Carrier Agreement ¶5) (emphasis added). But the relevant portion of Section 14706 simply reiterates that a motor carrier can be held liable "for the actual loss or injury to the property . . . ." Yet for an issue to be substantial, it must be important "to the federal system as a whole," not just "to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. Ultimately, liability will turn on state common law; and "it takes more than a federal element to open the 'arising under' door." *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (cleaned up). In other words, the application of the Carmack Amendment to Eastern's breach of contract claim will be minimal, not substantial.

For all that, attorneys' fees are unwarranted. To be sure, the Court "may require payment of just costs and any actual expense, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). But the Court may only do so "where the removing party lacked an objectively reasonable basis for seeking removal." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 791 (7th Cir. 2007). That is not the case here. While the Court is unpersuaded by Rahn's basis for removal, it is not so hollow as to lack legal justification. And "if clearly established law did not foreclose a

defendant's basis for removal, then a district court should not award attorneys' fees." *Id.* The litigants will go on to state court bearing their own costs.

## III. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff Eastern Express Inc.'s Motion for Remand and Attorneys' Fees and **REMANDS** to Illinois's Twentieth Judicial Circuit Court in Randolph County.

**IT IS SO ORDERED.**

**Dated: Friday, August 13, 2021**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**